## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| **ANTHONY MICKLETZ, a/k/a ED MICKLETZ,** | : | **Bky. No. 14-19375 ELF** |
| | : | |
| and | : | |
| | : | |
| **SUSAN MICKLETZ,** | : | |
| | : | |
| Debtors. | : | |
| ──────────────────────────── | : | |
| | : | |
| **JOHN P. CARMELO,** | : | **Adv. No.  15-87** |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **ANTHONY MICKLETZ,** | : | |
| **a/k/a ED MICKLETZ,** | : | |
| | : | |
| Defendant. | : | |

# O P I N I O N

## I.  INTRODUCTION

This adversary proceeding arises from an altercation between John Carmelo ("Carmelo"), and Anthony Mickletz ("the Debtor") in March 2006.  At the time of the altercation, Carmelo was an employee of Famous Fat Freddie's Pizza, LLC ("the Restaurant"), a pizza restaurant owned and operated by the Debtor.  Carmelo claims that the Debtor pushed him, causing him to fall and suffer injuries that have left him unable to work.  The Restaurant did not have worker's compensation insurance coverage on the day of the altercation. The Debtor denies that he pushed Carmelo.

-1-

Three (3) separate legal proceedings resulted from the incident in 2006:

    (1)  a worker's compensation proceeding brought by Carmelo, that resulted in both:

        (a)  an administrative award of compensatory benefits and monetary penalties; and

        (b)  a judicial money judgment against the Restaurant (reassessed on June 7, 2011 in the amount of $279,723.98);

    (2)  a criminal proceeding against the Debtor in state court for operating a business without maintaining worker's compensation insurance, which resulted in the entry of a criminal restitution order against the Debtor in the amount of $45,200.88; and

    (3)  a civil action in state court, in which Carmelo sought to pierce the Restaurant's corporate veil and hold the Debtor personally liable for the Restaurant's worker's compensation liability, resulting in a settlement in which the Debtor accepted personal liability for that debt.

The Debtor has conceded that the debt attributable to the criminal restitution order is nondischargeable.

At issue is whether the debts arising from the worker's compensation proceeding are nondischargeable.

The parties have filed cross motions for summary judgment.  The outcome of those motions turns largely on three (3) issues:

    (1)  whether issue preclusion applies to the factual findings made by the administrative law judge in the contested worker's compensation proceedings and precludes the Debtor from relitigating whether he injured Carmelo by pushing him to ground;

    (2)  if so, whether those findings support the entry of summary judgment in Carmelo's favor under 11 U.S.C. §523(a)(6), which renders nondischargeable a debt that is for a willful and malicious injury; and

    (3)  even if issue preclusion applies and the prior factual findings support

-2-

Carmelo's §523(a)(6) claim, whether the Debtor's personal liability on the
worker's compensation debt is nonetheless dischargeable because the debt is
merely contractual in nature and not one for willful and malicious injury.

For the reasons set forth below, I conclude that;

1.  the administrative law judge's material findings of fact in the worker's
    compensation proceeding are entitled to preclusive effect;

2.  those findings support the entry of summary judgment under §523(a)(6) with
    respect to most, but not all, of the worker's compensation debt;

3.  the Debtor's assumption of the Restaurant's liability in settlement of the state
    court civil action does not alter the debt's nondischargeable status insofar as
    the compensatory component of worker's compensation award is concerned;
    and

4.  the penalty component of the worker's compensation award is dischargeable
    under §523(a)(6).

Therefore, each party's motion for summary judgment will be granted in part and denied

in part.[1]


## II.  FACTS

### A.  The March 12, 2006 Incident

### 1.

In March 2006, the Debtor owned and operated the Restaurant. Carmelo began working

for the Restaurant in either 2003 or 2004 (FOF # 7a),[2] and was employed there in March 2006.

---

[1]      This court has jurisdiction under 28 U.S.C. §1334(b).  This is a core proceeding.  See 28
U.S.C. §157(b)(2)(I).  Therefore, the bankruptcy court may enter a final order.

[2]      In his decision dated June 14, 2007, attached to Carmelo's motion for summary judgment
as Ex. A, the ALJ made detailed findings of fact and conclusions of law.  I will cite to those findings as
(continued...)

He held various positions within the company, including delivery driver, manager, and general

worker.  (Id. # 7a).

On March 12, 2006, Carmelo was working as a delivery driver.  (FOF # 7c).  Carmelo

finished his shift and went home for the day but the Debtor called him and asked him to return to

the Restaurant.  (FOF # 7c).  The Debtor questioned Carmelo regarding delivery slips that had

allegedly been found in the trash.  He asked Carmelo whether he had stolen money from the

deliveries.  An argument ensued.  Carmelo denied the accusations[3] and tried to leave the

Restaurant because the Debtor "was becoming irate."  (FOF # 7c; Ex. 1-B, Carmelo Testimony at

29).[4]  At that point, the Debtor was "confrontational" and "enraged," and threatened to call local

authorities regarding the alleged theft.  (Ex. 1-C, Carmelo Dep. at 13).  The Debtor blocked

Carmelo from leaving the Restaurant and pushed him dead center of his chest with both hands.

(Ex. 1-B, Carmelo Testimony at 29).  Carmelo fell backwards hitting his back and head "pretty

---

[2](...continued)
"FOF #," to the extent those findings are either undisputed or, as discussed infra, entitled to preclusive
effect.

[3]      Carmelo denied stealing the money and throwing away the receipts to cover up his theft.
However, he paid the $40.00 at issue to the Debtor.  (FOF # 9b; Ex. B, Camelo Testimony at 57).

[4]      Carmelo attached seven (8) exhibits to his motion for summary judgment, labeled Exs. A
through H.  (Doc. # 11).  Carmelo filed two (2) additional exhibits with his reply to the Debtor's response
to his summary judgment motion, also designating those exhibits as Exs. A, B and C.  (Doc. # 23).  To
make matters worse, the Debtor submitted two (2) exhibits with his response to Carmelo's motion, also
designating them as Exs. A and B.  (Doc. # 17).

        In this Opinion, I will not cite to any of the Debtor's exhibits.  I will cite to the exhibits
attached to Carmelo's Motion as "Ex. 1-A" etc. and the exhibits attached to Carmelo's reply to the
Debtor's response to the Motion as "Ex. 2-A" etc.

hard." (FOF # 7c; Ex. 1-B, Carmelo Testimony at 29-30).

Carmelo sought medical attention at Pottstown Hospital and later with his family

physician.  (FOF # 7d).  Carmelo presented the testimony of his treating physician, Dr. Jeffery T.

Lumley, D.O. ("Dr. Lumley") as to the extent of his injuries.  Dr. Lumley treated Carmelo for

approximately three (3) months. Upon his initial examination, Dr. Lumley concluded that

Carmelo had strained his right hand, wrist, and lower back as a result of the fall, and had chronic

cervical disc degeneration with a possible acute exacerbation.  (Id. # 12b).  Dr. Lumley again saw

Carmelo on April 3, 2006.  Carmelo complained of shooting pain in his neck and lower back and

needed a cane to walk.  (Id. # 12c).  Two weeks later, Carmelo complained of worsening of his

left-sided numbness and weakness.  (Id. # 12e).

The Debtor admitted that his conversation with Carmelo was heated and that he was

yelling at Carmelo.  (Id. # 8c).  However, the Debtor testified that he did not push Carmelo and

Carmelo did not fall.  (Id. # 9b).  According to the Debtor, he terminated Carmelo's employment,

walked him out to his car and retrieved some pizza delivery bags. (Ex. 1-D, Mickletz Testimony

at 46).  Two (2) witnesses, both Restaurant employees, testified at the worker's compensation

hearing.  One (1) witness corroborated the Debtor's version of the events and the other witness

initially did so as well, but later recanted his testimony and gave subsequent testimony that

supported Carmelo's version of the events.[5]

---

[5]    Edward Coffey ("Coffey") was a delivery driver for the Restaurant and was working as
such the night of the argument.  Coffey testified that only three (3) delivery slips had been attributed to
Carmelo for that day and that he found several delivery slips in the garbage dumpster located outside,
behind the Restaurant. (Ex. 1-D, Coffey Testimony at 8-9).  He informed the Debtor of his discovery,
and after Carmelo returned to the Restaurant, the Debtor confronted him.  Coffey testified that he did not
see the Debtor push Carmelo and Carmelo did not fall.  (FOF #9b; Ex. 1-D, Coffey Testimony at 14).

(continued...)

**2.**

At the conclusion of the worker's compensation hearing, which was held on four (4) separate days between June 22, 2006 and January 11, 2007, (see Ex. 1-A), the administrative law judge ("the ALJ") resolved the conflicting testimony in favor of Carmelo.

The ALJ awarded Carmelo total disability benefits; reasonable, necessary and related medical expenses resulting from the injury; reasonable litigation costs; counsel fees; and statutory interest.  The ALJ further ordered the Restaurant to pay a penalty of 50% of the indemnity plus interest[6] (the compensatory award and penalty collectively, "the Comp. Award").

On August 24, 2007, the Comp. Award was entered as a judgment in the amount of $85,484.44 in the C.P. Court at No. 2006-16219 ("the Judgment").  Subsequently, the Judgment was reassessed upward, most recently on June 7, 2011 to the amount of $279,723.98.

## B.  The Restitution Order

77 P.S. 501(b) provides that an employer who fails to comply with his obligation to

---

[5](...continued)
          Edward Brosky ("Brosky") was a cook for the Restaurant.  He was first called to testify for the Restaurant on December 5, 2006.  Brosky described the argument over the delivery slips.  Brosky said he did not see the Debtor push Carmelo nor did he see Carmelo slip and fall.  (FOF # 10a).

          Brosky testified again at a later hearing on January 11, 2007 and changed his testimony dramatically.  At the later hearing, he testified that he saw the Debtor push Carmelo in the chest and Carmelo fell back and landed on his back.  (Id. # 11c).

[6]          By statute, Pennsylvania requires requires employers to maintain worker's compensation insurance to protect its employees.  77 P.S. §501(a)(1).  A violation under this section, subjects noncompliant employers to civil penalties and criminal sanctions.  See 77 P.S. §§501(b) and 991(d)(i).

provide worker's compensation insurance coverage:

> shall, upon conviction in the court of common pleas, be guilty of a
> misdemeanor of the third degree. If the failure to comply with this section is
> found by the court to be intentional, the employer shall be guilty of a felony of
> the third degree. Every day's violation shall constitute a separate offense. A
> judge of the court of common pleas may, in addition to imposing fines and
> imprisonment, include restitution in his order: Provided, That there is an
> injured employe who has obtained an award of compensation. The amount of
> restitution shall be limited to that specified in the award of compensation.

On March 13, 2007, the Debtor was charged criminally in the C.P. Court for operating a

business without the required worker's compensation insurance coverage.[7]  The Debtor pled

guilty on August 27, 2007 and on November 16, 2007, the C.P. Court issued a criminal

restitution order requiring the Debtor to pay Carmelo $45,200.88, to be paid in monthly

instalments ("the Criminal Restitution Debt").[8]


## C.  The Civil Action and the Forbearance Agreement

In March 2008, Carmelo filed a civil lawsuit in the C.P. Court, at No. 08-06290 ("the

Civil Action"), seeking to pierce the veil of the Debtor and his wife's companies, and to hold the

Debtor and his wife (Susan Mickletz) individually liable for the Comp. Award and related

Judgment.

---

[7]     The criminal docket is a public record and is available at
https://ujsportal.pacourts.us/DocketSheets/CPReport.ashx?docketNumber=CP-46-CR-0001820-2007
("the Criminal Docket").  The first docket entry is dated March 13, 2007.  See Criminal Docket at p. 253.


[8]     Criminal Docket at p. 254.  The docket states that, as of December 31, 2015, the
remaining balance due on the Criminal Restitution Debt is $36,724.96.  Id. at p. 264.

On May 19, 2010, Carmelo, the Debtor, Mrs. Mickletz and the Restaurant settled the

Civil Action by entering into a forbearance agreement ("the Forbearance Agreement"). (Ex. 2-

A).[9]

The Forbearance Agreement provided, <u>inter alia</u> that:

• the Debtor, Mrs. Mickletz and the Restaurant acknowledged their liability for
   the Judgment;

• the amount due on the Judgment was $229,390.00;

• Carmelo would limit his recovery on the Judgment to $175,000.00;

• the Debtors would execute a judgment note ("the Judgment Note") in favor of
   Carmelo in the amount of $175,000.00

• Carmelo would forbear from collecting on the Judgment or exercising his
   rights under the Judgment Note, provided the Debtors made an initial payment
   of $3,000.00 followed by monthly payments of $350.00.


### III.  PROCEDURAL HISTORY

On November 26, 2014, the Debtors filed a voluntary joint chapter 7 bankruptcy case.

The Debtors were granted a chapter 7 discharge on April 2, 2015.

On March 10, 2015, Carmelo filed this adversary proceeding seeking a determination that

his claim against the Debtor, Anthony Mickletz, is nondischargeable pursuant to 11 U.S.C.

§§523(a)(6) and (a)(13).  The Debtor filed his Answer to the Complaint on April 10, 2015.  (Doc.

# 4).

---

[9]       The Debtor does not dispute the authenticity of the Forbearance Agreement.  The
Forbearance Agreement also includes S.A.K.A.T., LLC as a party, referring to that entity as an operator
of the Restaurant.

Carmelo filed a motion for summary judgment ("Carmelo's Motion") on August 4, 2015.

(Doc. #'s 9, 10). Carmelo's Motion is limited to his claim of nondischargeability under

§523(a)(6).[10] The Debtor filed a brief in opposition to the Plaintiff's motion and a cross motion

for summary judgment ("Debtor's Cross Motion") on August 20, 2015. (Doc. #'s 17, 19).

Carmelo filed a reply brief in support of his Motion and a response in opposition to the Debtor's

Cross Motion on September 8, 2015. (Doc. #'s 22, 23).

In his response to Carmelo's Motion, the Debtor acknowledged that he has continued to

make instalment payments on the Criminal Restitution Debt and conceded its

nondischargeability. (Debtor's Brief in Opposition to Carmelo's Motion at 4, 9) (Doc. # 19).

Thus, the only remaining issue is whether either party is entitled to summary judgment on

Carmelo's claim that the Comp. Award and related Judgment are nondischargeable under 11

U.S.C. §523(a)(6).

## IV.  SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when the moving party demonstrates "there is no

genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."

---

[10]      Carmelo's brief in support of his motion refers to and analyzes the applicability of
§523(a)(6) but does not address the merits of his claim under subsection §523(a)(13). Section 523(a)(13)
renders nondischargeable debts for restitution under the U.S. Criminal Code. Nothing in the record
suggests that the Debtor has been subject to any federal criminal restitution order. Carmelo probably
meant to invoke 11 U.S.C. §523(a)(7). See generally Kelly v. Robinson, 479 U.S. 36, 50 (1986)
(§523(a)(7) precludes the discharge of any condition a state criminal court imposes as part of a criminal
sentence, including a restitution order). But no matter. The Debtor concedes the nondischargeability of
the criminal restitution.

Fed. R. Civ. P. 56(a); <u>Jensen v. Pressler & Pressler</u>, 791 F.3d 413, 417 (3d Cir. 2015).[11]

Under Rule 56, the moving party is entitled to judgment as a matter of law if the court finds that the motion alleges facts which, if proven at trial, would require a directed verdict in favor of the movant. <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1115 (11th Cir. 1993). If the moving party meets its initial burden, the responding party may not rest on the pleadings, but must designate specific factual averments through the use of affidavits or other permissible evidentiary material which demonstrate a genuine issue of material fact to be resolved at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-50 (1986).

The court's role is not to weigh the evidence, but to determine whether there is a disputed, material fact for resolution at trial. <u>Anderson</u>, 477 U.S. at 249. A genuine issue of material fact is one in which the evidence is such that a reasonable fact finder could return a verdict for the non-moving party, <u>id.</u> at 248, and thereby affect the outcome of the suit, <u>Jensen</u>, 791 F.3d at 417. The court must view the underlying facts and make all reasonable inferences therefrom in the light most favorable to the party opposing the motion. <u>Pennsylvania Coal Ass'n v. Babbitt</u>, 63 F.3d 231, 236 (3d Cir. 1995); <u>United States v. 717 South Woodward St.</u>, 2 F.3d 529, 533 (3d Cir. 1993).

In this proceeding, one of the main points of contention is the Debtor's state of mind. "Issues such as intent and credibility are rarely suitable for summary judgment." <u>Wishkin v. Potter</u>, 476 F.3d 180, 184 (3d Cir. 2007). However,

---

[11]     Rule 56 is made applicable to this adversary proceeding pursuant to Fed. R. Bankr. P. 7056.

> [w]hile a person's motivation or intent is generally considered to be a question of
> fact which is not ordinarily subject to resolution on a motion for summary
> judgment, intent may be inferred when the evidence is so one sided that
> reasonable minds could not differ as to the only rational outcome.  Under
> circumstances such as these the factual issue of intent can be decided by the court
> as a matter of law.

In re Okan's Foods, 217 B.R. 739, 755 (Bankr. E.D. Pa. 1998) (citations omitted).


## V.  DISCHARGEABILITY UNDER 11 U.S.C. §523(a)(6)

One of the Bankruptcy Code's central purposes is to permit honest debtors to reorder

their financial affairs with their creditors and obtain a "fresh start," unburdened by the weight of

preexisting debt.  See In re Cohn, 54 F.3d 1108, 1113 (3d Cir. 1995); In re Marques, 358 B.R.

188, 193 (Bankr. E.D. Pa. 2006).

Exceptions to discharge are construed strictly against creditors and liberally in favor of

debtors.  In re Cohn, 54 F.3d 1108, 1113 (3d Cir. 1995); In re Glunk, 2011 WL 3555604, *11

(Bankr. E.D. Pa.  Aug. 11, 2011). A creditor objecting to the dischargeability of an indebtedness

bears the burden of proof.  In re Cohn, 54 F.3d 1108, 1113 (3d Cir. Pa. 1995); In re Stamou, 2009

WL 1025161, *3 (Bankr. D.N.J. Mar. 19, 2009); In re Marcet, 352 B.R. 462, 468 (Bankr. N.D.

Ill. 2006).  The burden of proof must be satisfied by a preponderance of the evidence.  Grogan v.

Garner, 498 U.S. 279, 291 (1991); In re August, 448 B.R. 331, 357 (Bankr. E.D. Pa. 2011)

(citations omitted).

Section 523(a)(6) excepts from discharge any debt for "willful and malicious injury by

the debtor to another entity or to the property of another entity."

Willful means deliberate or intentional injury, not just a deliberate or intentional act that

leads to injury.  In re Coley, 433 B.R. 476, 497 (Bankr. E.D. Pa. 2010) (citing Kawaauhau v.

Geiger, 523 U.S. 57 (1998)).  "[A]ctions taken for the specific purpose of causing an injury as

well as actions that have a substantial certainty of producing injury are 'willful' within the

meaning of § 523(a)(6)."  In re Coley, 433 B.R. at 497 (citing In re Conte, 33 F.3d 303, 307-09

(3d Cir. 1994)). The "Code requires at least a deliberate action that is substantially certain to

produce harm."  Conte, 33 F.3d at 309.

"Malice" means wrongful and without just cause or excuse, even in the absence of

personal hatred, spite or ill-will.  4 Collier on Bankruptcy ¶ 523.12 [2] (Alan N. Resnick, Henry

J. Sommer eds., 16th ed. 2009) ("Collier").

> Malice does not mean the same thing for nondischargeability purposes under §
> 523(a)(6) as it does in contexts outside of bankruptcy. In bankruptcy, debtor may
> act with malice without bearing any subjective ill will toward plaintiff creditor or
> any specific intent to injure same.

In re Wooten, 423 B.R. 108, 130 (Bankr. E.D. Va. 2010) (citation omitted) (emphasis added); see

also In re Vidal, 2012 Bankr. LEXIS 4198, 2012 WL 3907847, at *28 (Bankr. E.D. Pa. Sept. 7,

2012).

Therefore, in this proceeding, Carmelo must prove that:

(1) the subject debt arose from an injury that was willful (i.e., involving the
Debtor's deliberate and intentional conduct);

(2) the conduct was intended or substantially certain to cause injury; and

(3) the conduct was malicious (i.e., wrongful).

See, e.g., In re Jacobs, 381 B.R. 128, 144-45 (Bankr. E.D. Pa. 2008).

## VI.  ISSUE PRECLUSION APPLIES

The parties' dispute largely centers on the issue whether the Debtor is precluded from relitigating the ALJ's findings regarding the cause and nature of the conduct that led to Carmelo's injuries in March 2006.  For the reasons set out below, I conclude that Carmelo is entitled to invoke the doctrine of issue preclusion and preclude the Debtor from relitigating the facts found by the ALJ as to how Carmelo's work-related injuries occurred.

### A.  Issue Preclusion: General Legal Principles

### 1.

The doctrine of issue preclusion (also known as collateral estoppel), is based upon the principle that "a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise."  Dici v. Commw. of Pa., 91 F.3d 542, 547 (3d Cir. 1996) (quoting Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 107 (1991)).

The application of issue preclusion in a federal court action based on a prior state court judgment typically is grounded in the federal full faith and credit statute, 28 U.S.C. §1738, which provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken."  Accord Marrese v. Amer. Academy of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985).  Thus, in determining whether the doctrine bars relitigation of an issue previously determined by a state court, a federal court must apply state law and evaluate whether relitigation would be precluded in the courts of the state in which the initial litigation took place.  Swineford

-13-

v. Snyder County PA, 15 F.3d 1258, 1266 (3d Cir. 1994) ("Federal courts must give a state court

judgment the same preclusive effect as would the courts of that state").

This adversary proceeding involves facts previously determined by a state agency, not a

state court.  In University of Tennessee v. Elliott, 478 U.S. 788, 796 (1986), the Supreme Court

held that 28 U.S.C. §1738 does not apply to unreviewed state administrative factfinding.

However, as a matter of federal common law, the Court in Elliott also held that if a state agency

acting in a judicial capacity resolves issues of fact properly before it in which the parties had an

adequate opportunity to litigate, a federal court should give the agency's factfinding "the same

preclusive effect to which it would be entitled in the [s]tate's courts.  Id. at 977; accord

Swineford, 15 F.3d at 1266-67.  Therefore, I must consider Pennsylvania law and determine

whether a Pennsylvania court would accord preclusive effect to the findings made by the ALJ in

the worker's compensation proceeding.


## 2.

As a general principle, under Pennsylvania law, a court may apply issue preclusion to the

findings made in a prior adjudicative administrative proceeding; the doctrine is not limited to the

findings of a prior judicial proceeding.  See, e.g., Grant v. GAF Corp., 608 A.2d 1047, 1056 (Pa.

Super. Ct. 1992), aff'd sub nom., Gasperin v. GAF Corp., 639 A.2d 1170 (Pa. 1994); Christopher

v. Council of Plymouth Twp., 635 A.2d 749, 752 n.2 (Pa. Commw. Ct. 1993); see also Oxford

Investments, L.P. v. City of Philadelphia, 21 F. Supp. 3d 442, 450-51 (E.D. Pa. 2014);

Restatement of Judgments (Second) §83 (1982) ("Restatement").

Therefore, I must consider whether, in the particular circumstances presented, a

-14-

Pennsylvania court would apply the doctrine of issue preclusion.

### 3.

Under Pennsylvania law, in order for issue preclusion to apply, five (5) elements must be satisfied:

1.  the issue is identical to one that was presented in a prior case;

2.  there has been a final judgment on the merits of the issue in the prior case;

3.  the party against whom the doctrine is asserted was a party in, or in privity with a party in, the prior action;

4.  the party against whom the doctrine is asserted, or one in privity with the party, had a full and fair opportunity to litigate the issue in the prior proceeding; and

5.  the determination in the prior proceeding was essential to the judgment.

E.g., Dici, 91 F.3d at 548; Cohen v. Workers' Comp. Appeal Bd. (City of Philadelphia), 909 A.2d 1261, 1264 (Pa. 2006); Rue v. K-Mart Corp., 713 A.2d 82, 84 (Pa. 1998).

In considering the above requirements, a Pennsylvania court also must consider the nature of the issue that may be subject to preclusion.  When preclusion is sought with respect to a mixed fact/law issue or a legal issue, a Pennsylvania court must examine the underlying policy of the statutes in the prior and current matter before precluding relitigation of the issue.  If the policies in the two (2) statutes are not similar, then preclusion will not apply.  Odgers v. Commonwealth, 525 A.2d 359, 362-68 (Pa. 1987); accord Dici, 91 F.3d at 548.  However, the Pennsylvania Supreme Court has distinguished between issues of "pure fact" from mixed fact/law and legal issues.  In Rue, the Court held that when issues of "pure fact" were decided in the prior

-15-

proceeding, the policies underlying the competing statutes are irrelevant. 713 A.2d at 85. The

Court specifically limited its holding to unemployment compensation cases. Id. at 87 n.4.

Significantly, for purposes of the proceeding sub judice, the Third Circuit has predicted that the

Pennsylvania Supreme Court would extend its analysis in Rue to factual findings in worker's

compensation proceedings. Jones v. UPS, 214 F.3d 402, 406 (3d Cir. 2000).

   Thus, to the extent that the ALJ made findings of "pure fact" in the worker's

compensation proceeding, I need not engage in a comparative policy analysis of the Pennsylvania

Worker's Compensation Law and the federal Bankruptcy Code.

   A court also must consider the respective burdens of proof in the two (2) proceedings.

Disparate burdens of proof may foreclose application of the issue preclusion doctrine. See In re

Braen, 900 F.2d 621, 624 & n.1 (3d Cir. 1990). For example, "if the bankruptcy plaintiff

prevailed in the prior proceeding on a claim requiring a less rigorous level of scienter than that

required under the willful and malicious standard of § 523(a)(6), issue preclusion is not available

to the plaintiff." In re Kates, 485 B.R. 86, 103 (Bankr. E.D. Pa. 2012). Conversely, a party's

"failure to carry a higher standard of proof on an issue does not preclude a subsequent attempt to

satisfy a lower standard as to the same issue." 18 Charles Alan Wright & Arthur R. Miller,

Federal Practice and Procedure §4422 (2d ed. 2012).

   Here, the burdens of proof in the two (2) proceedings are the same, rendering the burden

of proof a non-issue with respect to the application of issue preclusion. As stated earlier, the

burden of proof under 11 U.S.C. §523(a)(6) is preponderance of the evidence. The burden of

proof in a worker's compensation claim also is preponderance of the evidence. E.g., Rossa v.

Workers' Comp. Appeal Bd. (City of Philadelphia), 839 A.2d 256, 260 (Pa. 2003) ("It is clear

that the general evidentiary burden on worker's compensation claimants, as it is traditionally

formulated, is to prove the necessary factual elements of the claim by a preponderance of the

evidence.") (citing cases).

## B. The Parties' Contentions

Carmelo contends that he prevailed on his worker's compensation claim and that the

Debtor is precluded from relitigating the ALJ's factual findings.  More specifically, he asserts

that the ALJ's findings of fact in the worker's compensation proceeding establish that the Debtor

intentionally pushed Carmelo, causing an injury and these findings satisfy the elements under

§523(a)(6).

The Debtor disputes that issue preclusion applies on several grounds.  He argues that the

following elements necessary for the application of the doctrine are lacking:

- privity;

- identity of the issues; and

- the essentiality of the ALJ's findings.

## C. The Parties Were In Privity

The Debtor argues that the element of privity is absent because the Restaurant was the

respondent party in the worker's compensation proceeding and not the Debtor individually.

(Debtor Response at ¶ 30) (Doc. # 17).  Respectfully, I disagree.

The concept of privity is a well-established exception to the general rule that limits the

-17-

application of issue preclusion to those who were parties to the prior litigation.  Nationwide Mut.

Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 310 (3d Cir. 2009).[12]  Privity is "defined

as mutual or successive relationships to the same right of property, or such an identification of

interest of one person with another as to represent the same legal right."  Ammon v. McCloskey,

655 A.2d 549, 554 (Pa. Super. Ct. 1995).  Its meaning has evolved over time from a "substantive

legal relationship" to "a way to express the conclusion that nonparty preclusion [i.e., issue

preclusion] is appropriate on any ground."  Nationwide Mut. Fire Ins., 571 F.3d at 311 (quoting

Taylor v. Sturgell, 553 U.S. 880, 894 n.8 (2008)).  Stated slightly differently (and to some extent

employing circular reasoning), privity describes a relationship between "one who is a party on

the record and another is close enough to estop the nonparty."  Hitchens, 98 F. App'x. at 112

(quoting Bruszewski v. United States, 181 F.2d 419, 423 (3d Cir. 1950)) (internal quotations

omitted).

        Courts have found privity to exist: "(1) where the nonparty has succeeded to, or shares a

concurrent right to the party's interest in, property, (2) where the nonparty controlled the prior

litigation, and (3) where the party adequately represented the nonparties' interests in the prior

proceeding."  First Options v. Kaplan, 913 F. Supp. 377, 383-384 (E.D. Pa. 1995).

        Strictly speaking, the Debtor was not a party to the worker's compensation proceedings.

However, the nominal party (the Restaurant) was a closely held business entity in which the

Debtor is the sole principal.   (Ex. 1-D, Mickletz Testimony at 52; Ex. 1-E, Mickeltz Testimony

---

[12]        Pennsylvania preclusion and privity law is generally consistent with federal preclusion
and privity law in this circuit.  See Hitchens, 98 Fed. Appx. 106, 113 n.3 (3d Cir.2004); First Options v.
Kaplan, 913 F. Supp. 377, 384 n.8 (E.D. Pa. 1995).

at 7).  The Debtor retained counsel and appeared in the worker's compensation proceedings,

testifying on behalf the Restaurant.  In these circumstances, he undoubtedly controlled the

litigation.  Further, the Debtor and the Restaurant's interests were aligned.  The Debtor and the

Restaurant were essentially one and the same.  As the owner, the Debtor had every reason to

avoid an adverse decision, especially one that determined he physically assaulted and injured

Carmelo.

Based on these undisputed facts, I conclude, as a matter of law, that the Debtor was in

privity with the Restaurant for purposes of issue preclusion.  See Sicalides v. Hartford Cas. Ins.

Co., 94 F. App'x 882, 884-85 (3d Cir. 2004); see also Restatement §59(3) (judgment against

closely held corporation is preclusive as to the principal if the principal actively participated in

the prior action on behalf of the corporation unless his interests and those of the corporation

differed).


### D.  Identity of Issues

As the moving party, Carmelo has the burden of proof to demonstrate that issues actually

litigated in the Worker's Compensation proceeding are identical to issues currently before this

court.  Hitchens, 98 Fed. App'x. at 112.  As explained above, purely factual issues are not

affected by the underlying policy considerations of the different statutes or laws at issue.  Rue,

713 A.2d at 85; accord Jones, 214 F.3d at 406.

The Debtor contends that the issues decided in the Worker's Compensation proceedings

are not identical to the issue presented here, i.e., whether a willful and malicious injury occurred.

The Debtor is correct that his state of mind is a distinct element of the claims in this §523(a)(6)

proceeding and that issue was not litigated in the worker's compensation proceedings.  However,

in making this argument, the Debtor confuses issue preclusion with claim preclusion.  Of course

there are differences between the elements of a worker's compensation claim and a

nondischargeability claim under 11 U.S.C. §523(a)(6).  That is why claim preclusion is

inapplicable.  But, if factual issues decided in the course of the worker's compensation

proceeding also are material issues in the subsequent nondischargeability proceeding, issue

preclusion is at play.  This is particularly true with respect to any historical facts necessarily

decided in the course of the worker's compensation proceeding.  See e.g., In re Weidner, 476

B.R. 873, 885 n.16 (Bankr. E.D. Pa. 2012).

       The worker's compensation proceeding and this adversary proceeding arise out of the

same set of events that occurred on March 12, 2006, when Carmelo was injured.  In the prior

proceeding, the ALJ was required to decide whether a work related injury occurred.  In doing so,

it is axiomatic that the ALJ had to determine the historical facts, i.e., what occurred.

       Those historical facts are likewise at issue in this proceeding.  The ALJ determined what

happened on March 12, 2006 and those findings are identical to the issue before this court.  See

Capobianchi v. BIC Corp., 666 A.2d 344, 349 (Pa. Super. Ct. 1995).


### D.  The ALJ's Findings Were Essential to the Prior Decision

       The Pennsylvania Worker's Compensation Act is designed to establish an efficient and

inexpensive structure and procedure that allowed a worker a right to compensation from one's

employer without regard to negligence.  See 54 P.L.E. Workers' Compensation §2 & 3 (Matthew

Bender 2013); accord 21 Summ. Pa. Jur. 2d Employment and Labor Relations § 13:3 (2d ed.

West 2016) (the statute "substitute[s] a method of accident insurance in place of common-law rights and liabilities for substantially all employees who suffer work-related injuries").

To establish a worker's compensation claim, the claimant must prove that an injury occurred during the course of employment and the injury resulted in loss of earning power. E.g., Cruz v. Workers Comp. Appeal Bd. (Kennett Square Specialties), 99 A.3d 397, 407 (Pa. 2014) (citing Bethlehem Steel Corp. v. W.C.A.B. (Baxter), 550 Pa. 658, 708 A.2d 801, 802 (Pa. 1998)); Gibson v. W.C.A.B. (Armco Stainless & Alloy Products), 580 Pa. 470, 861 A.2d 938, 943 (Pa. 2004).

The Debtor argues the factual finding that he pushed Carmelo to the ground during the course of an argument was not an essential determination in the worker's compensation proceeding. He posits that the ALJ needed to find only that an injury during the course of employment occurred, without regard to the precise cause (i.e., that the Debtor pushed Carmelo to the ground). The Debtor reasons that because, (in his view), the finding was not necessary, he is not precluded from relitigating the issue whether he pushed Carmelo to the ground thereby causing a willful and malicious injury.

Considering the narrow elements necessary to establish a worker's compensation claim, the Debtor's argument has some surface appeal. However, based on the particular circumstances of this case, I conclude that the ALJ's finding that the Debtor pushed Carmelo to the ground was essential to worker's compensation decision.

Carmelo's only factual theory in support of his claim of a work-related injury was that the Debtor pushed him to the ground. (He had no alternative theory, such as an accidental slip and fall). The Debtor defended against Carmelo's worker's compensation claim by asserting that he

did not push Carmelo, Carmelo did not fall to the ground and Carmelo was not injured during the

course of his employment.  Given the manner in which the parties presented the factual dispute to

the worker's compensation tribunal, the only way the ALJ could find that Carmelo had suffered a

work-related injury and was entitled to benefits was if he found that the Debtor pushed Carmelo

to the ground.  Indeed, this was the central litigation issue in the proceeding, with multiple

witnesses lining up on both sides of the question.  In these circumstances, the ALJ's factual

findings were essential to the award of benefits to Carmelo.

## VII.  THE UNDISPUTED FACTS ESTABLISH THAT THE DEBT FOR THE COMPENSATORY COMPONENT OF THE WORKER'S COMPENSATION AWARD IS NONDISCHARGEABLE UNDER 11 U.S.C. §523(a)(6)

As mentioned earlier, Carmelo was awarded worker's compensation benefits for the

injuries suffered during the course of his employment.  With respect to the compensatory aspect

of the worker's compensation award,[13] Carmelo's argument is straightforward – the Debtor's

physical assault on Carmelo during the course of an argument created a debt for a willful and

malicious injury.

As explained above, the Debtor cannot relitigate the fact that Carmelo's injury occurred

because the Debtor pushed Carmelo to the ground.  However, the preclusive effect of that finding

advances the Plaintiff's nondischargeability claim only so far.  The ALJ's findings of fact do not

address directly the scienter element under §523(a)(6).[14]  Nonetheless, based on the entire factual

---

[13]       As stated in Part II.A.2, supra, the Comp. Award also included a civil penalty.

[14]       Generally, bankruptcy courts in this circuit have employed a subjective standard, i.e.,

(continued...)

record, I conclude, as a matter of law, that the compensatory component of the Comp. Award is a debt for a willful and malicious injury.

Ordinarily, the issue of intent is not suitable for disposition on summary judgment. In re Kilmartin, 508 B.R. 35, 42 (Bankr. W.D. Ky. 2014). Generally, intent is a question of fact. But, "[w]hen the evidence is so one sided that reasonable minds could not differ as to the only rational outcome . . . the factual issue of intent can be decided by the court as a matter of law." In re Weidner, 476 B.R. 873, 883 (Bankr. E.D. Pa. 2012) (citing Okan's Foods, 217 B.R. at 755)); accord In re Dygert, 2000 Bankr. LEXIS 626, 2000 WL 630833, at *9 (Bankr. D. Minn. May 11, 2000). In the particular circumstances of this proceeding, I infer the Debtor's intent from the undisputed record as a matter of law.

As explained in Part VI.D, supra, the Debtor chose to defend the Worker's Compensation Claim on the ground that the injury never occurred. Once that issue was determined adversely to the Debtor by the ALJ (with the accompanying, necessary finding that the injury occurred when the Debtor pushed Carmelo to the ground), the Debtor cannot offer evidence of any different version of events.[15]

---

[14](...continued)
that a debtor must be subjectively aware that his or her conduct are substantially certain to cause injury, in evaluating willfulness under 11 U.S.C. §523(a)(6). See In re Gotwald, 488 B.R. 854, 865-66 (Bankr. E.D. Pa. 2013) (collecting cases). This subjective standard arguably is more rigorous than an objective standard. As explained below, I conclude that the record supports a finding of wilfulness under the subjective standard. Therefore, it is unnecessary to decide which is the appropriate standard under §523(a)(6).

[15]        For instance, if this case proceeded to trial, the Debtor would not be able to testify that he did not push Carmelo. Further, in light of his consistent position that he never pushed Carmelo, the Debtor could not with any credibility, concede that he pushed Carmelo but claim that it was an

(continued...)

Thus, the binding facts are as follows.

On the day in question, the Debtor and Carmelo had a conversation regarding missing sales receipts and the Debtor accused Carmelo of stealing money. The conversation escalated into a heated argument. The Debtor was angry because he felt betrayed by Carmelo's alleged theft. He lost his temper and pushed Carmelo with both hands on the dead center of his chest. Absent from the record is any evidence that Carmelo instigated the physical altercation or struck first, which may have justified a defensive reaction from the Debtor. And, because the Debtor claims that he never pushed Carmelo, he of course, has not produced any evidence that his actions were justified or unintentional or accidental. Judging by the extent and severity of Carmelo's injuries, the Debtor pushed Carmelo forcefully. The Debtor had been described as bigger or more stocky than Carmelo.[16] (Ex. 1-B, Carmelo Testimony at 77-78; Ex. 1-G, Brosky Dep at 12). Carmelo required ongoing medical treatment after his injury and now requires a cane to walk.

These facts support the conclusion that the compensatory portion of the worker's compensation award is a nondischargeable debt for willful and malicious injury. The Debtor's intentional push of Carmelo, in a moment of anger and with enough force to knock him to the ground and cause a significant injury is sufficient to establish that the Debtor was subjectively

---

[15](...continued)
unintended or defensive action.

[16]    The Debtor testified that at the time of the incident, he was between 5'7" and 5'8" inches tall and weighted between 240 and 250 pounds. (Ex. E, Mickletz Dep. at 32-33). Carmelo is similar in height but weighs less. (Ex. 1-B, Carmelo Testimony at 77-78).

aware that his action was substantially certain to cause injury.  <u>Accord</u> <u>Conte</u>, 33 F.3d at 309; <u>In</u>

<u>re Graham</u>, 455 B.R. 227, 232 (Bankr. D. Colo. 2011); <u>In re Hermosilla</u>, 430 B.R. 13, 25 (Bankr.

D. Mass. 2010).


## VIII.  THE ORIGINATION OF THE SUBJECT DEBT AS A WORKER'S COMPENSATION CLAIM AGAINST THE RESTAURANT DOES NOT INSULATE THE DEBTOR FROM A NONDISCHARGEABILITY DETERMINATION UNDER §523(a)(6).

In support of his Cross-Motion, the Debtor makes two (2) related arguments.

First, he argues that the Comp. Award is grounded in a statutory cause of action that

imposes liability without any scienter requirement; a claimant need establish only (1) a

work-related physical or mental injury and (2) some disability.  <u>E.g.</u>, <u>Brubacher Excavating, Inc.</u>

<u>v. W.C.A.B. (Bridges)</u>, 835 A.2d 1273, 1276 (Pa. 2003).  Accordingly, the Debtor characterizes

the Comp. Award as a liability divorced from any requirement that the requisite injury be willful

and malicious.

Second, he points out, accurately, that he was not personally liable for the Comp. Award.

Carmelo never filed a tort action against him individually[17] and, undoubtedly the statute of

limitations has long passed since the events of March 2006.  The sole source of his personal

liability to Carmelo is the Forbearance Agreement that settled the Civil Action.  He suggests that

this personal liability is merely contractual in nature, dischargeable and not subject to §523(a)(6).

Based on existing §523(a) jurisprudence, I conclude that both arguments are without

---

[17]    The Restaurant, not the Debtor, was Carmelo's employer.  Whether Carmelo was free to bring a tort action against the Debtor individually turns on whether altercation occurred for personal reasons unrelated to employment.  <u>See</u> 77 P.S. §§411(1),481(b); <u>McErlean v. Borough of Darby</u>, 157 F. Supp. 2d 441, 448 (E.D. Pa. 2001).

merit.

## A.  The Compensatory Component of the Comp. Award Is a Debt for a Willful and Malicious Injury

In evaluating the Debtor's first argument, I begin with the text of §523(a)(6), which excepts from discharge a "debt . . .  for willful and malicious injury by the debtor to another entity or to the property of another entity."

The Debtor's argument requires a determination as to what Congress meant when it used the word "debt for willful and malicious injury" in this context.  Was Congress limiting the discharge exception to those debts in which applicable nonbankruptcy law that created the creditor's right to payment[18] includes elements consistent with the Bankruptcy Code meaning of the phrase to the "willful and malicious," as the Debtor contends?  If so, the debt here would be dischargeable under §523(a)(6) because the elements of a worker's compensation claim are far less rigorous than those in a §523(a)(6) nondischargeability determination.  Or, should courts look behind the legal elements under applicable nonbankruptcy law and evaluate the underlying facts that gave rise to the claim in evaluating whether the debt is for a willful and malicious injury?  If so, the facts here support a determination of nondischargeability.

As stated earlier, exceptions to discharge are construed strictly against creditors and liberally in favor of debtors.  Nevertheless, in the circumstances presented here, a competing policy is paramount: "[a]s a matter of social policy, section 523(a)(6) of the Bankruptcy Code prevents a debtor from using a Chapter 7 bankruptcy case to discharge debts for injuries to

---

[18]    See 11 U.S.C. §101(5) (definition of bankruptcy "claim" as a "right to payment").

persons or property resulting from intentional torts committed by the debtor." In re McCarthy,

179 B.R. 876, 880 (Bankr. N.D. Ill. 1995); accord In re McGuffey, 145 B.R. 582, 585 (Bankr.

N.D. Ill. 1992) ("[t]he policy behind § 523(a)(6) is to preserve the benefits of bankruptcy's fresh

start for the honest debtor, not the malicious wrongdoer").  As another court put it, §523(a)(6) "is

aimed at the type of both socially and morally reprehensible conduct that is not deserving of the

fresh-start policy which underlies the Bankruptcy Code." In re West, 446 B.R. 813, 815 (Bankr.

N.D. Ohio 2010)

     A debtor should not be able to escape the policy limitations on the bankruptcy discharge

simply because, prior to the bankruptcy filing, the injured person employed a remedial

mechanism under nonbankruptcy law with less onerous elements than those set forth in 11

U.S.C. §523(a)(6).  Nor, as a matter of bankruptcy policy, should an otherwise nondischargeable

debt be discharged because, as is the case here, a state's remedial scheme may have abrogated

conventional intentional tort remedies with a no-fault regulatory scheme.  See n.17, supra.

     For these reasons, I conclude that in evaluating the dischargeability of a debt under

§523(a)(6), a bankruptcy court can and should look behind the formalities of the pre-bankruptcy

proceedings and determine whether a creditor's injury was caused by the debtor's willful and

malicious conduct.


### B.  The Forbearance Agreement Did Not Alter the Debt's Character as a Debt for Willful and Malicious Injury

     The Debtor's conduct created a debt for willful and malicious injury, which was

memorialized in the compensatory component of the Comp. Award.  However, prior to the

Forbearance Agreement, the Debtor was not personally liable for that debt.  In the Civil Action,

Carmelo sought to extend liability for that debt to the Debtor by piercing the Restaurant's

corporate veil.  As a practical matter, he succeeded in that effort when the parties entered into the

Forbearance Agreement.

Based on this history, the Debtor characterizes his liability as a mere, contractual,

dischargeable debt.  Largely on the strength of the Supreme Court's decision in Archer v.

Warner, 538 U.S. 314 (2003), I reject the Debtor's argument.

In Archer, the plaintiffs alleged that the debtors had committed fraud in the purchase of a

business.  They filed suit and settled the action.  The settlement agreement provided for a

complete release of the claims and no admission of any fraud.  The debtors later defaulted on the

obligation and filed bankruptcy.

The plaintiffs as creditors then sought to have the debt determined nondischargeable.  The

lower courts, including the Fourth Circuit Court of Appeals, found that the settlement agreement,

releases, and the promissory note "had worked a kind of 'novation.'"  538 U.S. at 318.  Thus,

under the new contract, the debt was a  different obligation, one that was not potentially obtained

by fraud.  The lower courts held it to be a debt under the settlement agreement and dischargeable

in bankruptcy.

The Supreme Court reversed on the ground that the outcome was controlled by its earlier

decision in Brown v. Felsen, 442 U.S. 127 (U.S. 1979).

As summarized in Archer, the factual scenario in Brown was as follows:

> (1) Brown sued Felsen in state court seeking money that (Brown said)
>     Felsen had obtained through fraud;

-28-

    (2) the state court entered a consent decree embodying a stipulation
        providing that Felsen would pay Brown a certain amount;

    (3) neither the decree nor the stipulation indicated the payment was for
        fraud;

    (4) Felsen did not pay;

    (5) Felsen entered bankruptcy; and

    (6) Brown asked the Bankruptcy Court to look behind the decree and
        stipulation and to hold that the debt was nondischargeable because it
        was a debt for money obtained by fraud.

Archer, 538 U.S. at 319.

In Brown, the Court unanimously held that "[c]laim preclusion did not prevent the Bankruptcy Court from looking beyond the record of the state-court proceeding and the documents that terminated that proceeding (the stipulation and consent judgment) in order to decide whether the debt at issue (namely, the debt embodied in the consent decree and stipulation) was a debt for money obtained by fraud."  442 U.S. at 138-139.  In Archer, the Court adhered to Brown's holding, even though the "settlement agreement and releases may have worked a kind of novation."  538 U.S. at 323.

In Brown and Archer, the Supreme Court has instructed that a debt retains its underlying initial character even though it may change its form.  "[T]he mere fact that a conscientious creditor has previously reduced his claim to judgment should not bar further inquiry into the true nature of the debt."  Archer, 538 U.S. at 320-21 (quoting Brown, 442 U.S. at 138).

In Part VIII.A., supra, I determined that the compensatory component of the Comp. Award was a debt for willful and malicious injury under 11 U.S.C. §523(a)(6).  In the Civil Action, Carmelo asserted that the Restaurant and the Debtor were one and the same.  The

purpose of the Civil Action was to obtain a judicial determination that the Debtor was personally

liable for the Comp. Award  – just as if, from the start, he had been named individually as the

employer-respondent in the worker's compensation proceeding.  Indeed, had the Debtor been the

respondent in the worker's compensation proceeding (either because the Restaurant was a sole

proprietorship or due to a piercing of the corporate veil), it would be indisputable, based on my

conclusions earlier in this Opinion, that the compensatory component of the Comp, Award would

be a nondischargeable debt under §523(a)(6).  The mere fact that the Debtor's personal liability

for that nondischargeable debt was effected through the Civil Action and by a settlement

agreement rather than completion of litigation, should not change the result. Brown and Archer

both instruct that, in these circumstances, the nondischargeable nature of the debt is unaltered.

Consequently, the Forbearance Agreement provides no defense to Carmelo's §523(a)(6)

nondischargeability claim against the Debtor.


## IX.    THE DEBTOR IS ENTITLED TO SUMMARY JUDGMENT UNDER 11 U.S.C. §523(a)(6) WITH RESPECT TO THE PENALTY COMPONENT OF THE COMP. AWARD

The ALJ found that the Restaurant had not carried Worker's Compensation insurance

since June 17, 2005 and did not have insurance at the time of Carmelo's injury on March 12,

2006.  (FOF #6).  The Restaurant was without insurance for many months without just cause or

excuse.  (Id. #19).  In these circumstances, the ALJ assessed a penalty of 50% of all outstanding

compensation benefits.  (Id. #21).

With respect to the penalty component of the Comp. Award, the issue under 11 U.S.C.

§523(a)(6) is whether a monetary penalty imposed for the failure to carry worker's compensation

insurance is a debt for  willful and malicious injury.

The case law is divided on the issue of whether the failure to obtain or maintain worker's

compensation is a willful and malicious injury.  Compare In re Lashley, 2000 Bankr. LEXIS

2036 (Bankr. D. Neb. Oct. 16, 2000); In re Strauss, 99 B.R. 396 (N.D. Ill. 1989); In re Erickson,

89 B.R. 850 (Bankr. D. Idaho 1988); In re Holmes, 53 B.R. 268 (Bankr. W.D. Pa. 1985), with In

re Popa, 214 B.R. 416, 421 (B.A.P. 1st Cir. 1997); In re Walker, 48 F.3d 1161 (11th Cir. 1995); In

re Kirk, 2009 WL 700192, at *2 (Bankr. S.D. Iowa Mar. 13, 2009); In re Vizzini, 348 B.R. 339,

347 (Bankr. E.D. La. 2005).

I agree with the majority of cases that hold that the failure to obtain or maintain worker's

compensation insurance is not a willful and malicious injury that is excepted from discharge.  In

particular, I find the reasoning of Walker to be persuasive:

> [W]e cannot locate, any persuasive or binding authority to convince us that statutorily required workers' compensation benefits are property, distinguishable from the rights of any other creditor against a debtor.
>
> More importantly, this type of "injury" is nothing more than a recasting of the "reckless disregard" standard expressly rejected by Congress and by this court. American Cast Iron Pipe Co. v. Wrenn (In re Wrenn), 791 F.2d 1542, 1544 (11th Cir. 1986) (per curiam) ("An act in reckless disregard of the rights of others is insufficient to constitute 'willful and malicious' conduct for purposes of 11 U.S.C. § 523(a)(6)."); Chrysler Credit Corp., 842 F.2d at 1263; S.Rep. No. 989, at 79, 1978 U.S.C.C.A.N. at 5865; H.R.Rep. No. 595, at 365, 1978 U.S.C.C.A.N. at 6320-21. Operating without insurance is a clear example of recklessness: the failure to insure does not guarantee that an employee will suffer a physical or economic injury while on the job. The employer's failure to secure workers' compensation coverage mandated by the state legislature may subject him to criminal penalties including imprisonment, see O.C.G.A. §§ 34-9-126(b), 17-10-3(a), but it does not follow that his discharge in bankruptcy is to be denied as an additional penalty. Moreover, we reject the argument that a loss of workers' compensation insurance per se is an injury under section 523(a)(6).

Walker, 48 F.3d at 1165.

Accordingly, I find that the penalty portion of the Comp. Award is a dischargeable debt.[19]

## VII.  CONCLUSION

The motions for summary judgment are granted in part and denied in part.  Pursuant to 11 U.S.C. §523(a)(6), the compensatory component of the Comp. Award is nondischargeable, the penalty component of the Comp. Award is dischargeable and the debt attributable to the Criminal Restitution Debt is nondischargeable.

An appropriate order will be entered.

Date:  **January 28, 2016**

_____
**ERIC L. FRANK**
**CHIEF U.S. BANKRUPTCY JUDGE**

---

[19]     I have determined that the penalty is not nondischargeable under 11 U.S.C. §523(a)(6). Carmelo raised no claims, in either the Complaint or his Motion, that the penalty is nondischargeable under any Code section other than §523(a)(6). I have not considered or analyzed whether the penalty component of the Comp. Award is nondischargeable under any other provision, including §523(a)(7). On this record, I will determine that component of the debt to be dischargeable, even though nondischargeability claims under §523(a)(7) are not subject to the sixty (60) day deadline set forth in Fed. R. Bankr. P. 4007(c) and, generally speaking, may be asserted at any time, see Fed. R. Bankr. P. 4007(b).  See generally 4 Collier ¶ 523.04 (for "discharge exceptions other than those arising under subsections 523(a)(2), (4) and (6), state courts have concurrent jurisdiction with the bankruptcy court to determine the dischargeability of a debt  .   .   . [and there] are no specific time deadlines imposed by the Code or the Federal Rules of Bankruptcy Procedure for the determination of the dischargeability").  In this proceeding, Carmelo put the the dischargeability of the debt at issue.  At this point, simply leaving the issue open and available to be determined at a later date (perhaps in another forum) effectively would allow Carmelo to split his claims.  This would violate basic principles of res judicata.  See, e.g., Churchill v. Star Enterprises, 183 F.3d 184, 194-95 (3d Cir. 1999); Ally Fin., Inc. v. Mente Chevrolet Oldsmobile, Inc., No. 2012 WL 4473240, at *2 (E.D. Pa. Sept. 28, 2012).